UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| LOUIS COFFMAN, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 5: 23-114-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| AT&T, CORP., | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendant. | ) | |

*** *** *** ***

Defendant AT&T Services, Inc.[1] (AT&T) has filed a motion to compel arbitration and stay all proceedings in this action. [Record No. 9] It contends that the parties executed a proper arbitration agreement and that Plaintiff Coffman otherwise waived his right to a judicial determination by initiating arbitration in 2021. [*Id.*] Coffman counters by arguing, *inter alia,* that the arbitration agreement is unconscionable. [Record No. 14] The Court will grant the motion because the parties have a valid, written agreement encompassing the claims asserted in this matter. Further, Plaintiff Coffman has failed to assert facts amounting to unconscionability.

**I.   Background**

Coffman is a former employee of BellSouth Telecommunications, Inc., which "became a wholly-owned subsidiary of AT & T Inc. following a merger effective December 29, 2006." *Lawson v. Bell South Telecommunications, Inc.*, No. 09–CV–3528, 2011 WL 3608462, at *1

---

[1] AT&T contends that it was "[e]rroneously sued as AT&T, Corp. in [the plaintiff's] state court complaint." [Record No. 9]

- 1 -

n.1 (N.D. Ga. Aug. 16, 2011). He participated in a collective action against his employer to recover unpaid overtime wages which led to an approved settlement on April 23, 2013. *See* Order Granting Joint Motion for Settlement, *Lawson et al v. BellSouth Telecommunications, Inc.*, No. 1:09-cv-03528-CAP, (N.D. Ga. Apr. 23, 2013), ECF. No. 131. During those proceedings, Coffman received a notice of the proposed collective action settlement ("Notice") and signed a consent and claim form ("Consent Form") and arbitration agreement on June 19, 2013. [Record No. 9-3] The arbitration agreement contains the following provision:

> This Agreement applies to any claim that you may have against [AT&T] . . . and this Agreement also applies to any claim that the Company or any other AT&T company may have against you. **Unless stated otherwise in this Agreement, covered claims include without limitation those arising out of or related to your employment or termination of employment with the Company and any other disputes regarding the employment relationship**, trade secrets, unfair competition, compensation, breaks and rest periods, termination, defamation, retaliation, discrimination or harassment and claims arising under the Uniform Trade Secrets Act, Civil Rights Act of 1964, Americans With Disabilities Act, Age Discrimination in Employment Act, Family Medical Leave Act, Fair Labor Standards Act, Genetic Information Non-Discrimination Act, and state statutes and local laws, if any, addressing the same or similar subject matters, and all other state and local statutory and common law claims. This Agreement survives after the employment relationship terminates. . . .
>
> Except as it otherwise provides, this Agreement is intended to apply to the resolution of disputes that otherwise would be resolved in a court. This Agreement requires all such disputes to be resolved only by an arbitrator through final and binding arbitration and not by way of court or jury trial. Such disputes include without limitation disputes arising out of or relating to interpretation or application of this Agreement, but not as to the enforceability, revocability or validity of the Agreement or any portion of the Agreement, which shall be determined only by a court of competent jurisdiction.

[Record No. 9-3 (emphasis added)] Another provision states that the arbitrator will be "selected pursuant to [Judicial Arbitration and Mediation Services, Inc., (JAMS)] rules or by

mutual agreement of the parties." [*Id.*] Coffman signed the forms, cashed the settlement checks, and remained an AT&T employee.

The plaintiff received a call from his supervisor on February 28, 2017, informing him that "he was being placed on the surplus list." [Record No. 9-2, p. 8.] His supervisor allegedly indicated that Coffman "would be put in the job bank for 60 days, in which he could submit his application for other open positions within the Company," and would be given a certain level of priority over other applicants. [*Id.* at 7-8.] Coffman then discovered "by combing through his spam mailbox in March 2017," that AT&T modified the minimum requirements for an employee to collect retirement benefits in 2013. [*Id.*] He was subsequently terminated "less than [six] months from retirement," according to AT&T's alleged modified retirement requirements. [*Id.* at 8.]

Coffman initiated arbitration in 2021, "pursuant to the arbitration agreement between the parties which became effective June 19, 2013." [*Id.* at 5.] He stated that the appropriate jurisdiction was "Boyle County Circuit Court, where [he] would have brought his claims if not bound by the arbitration agreement." [*Id.*] Coffman asserted claims for promissory estoppel, breach of contract, misrepresentation, and age discrimination. The parties engaged in written discovery and depositions, with a March 31, 2023, deadline to complete all fact discovery. [Record No. 9-2, p. 3]

Ten days before the discovery deadline in the arbitration proceeding, however, Coffman filed suit in the Boyle County Circuit Court based on the same facts that he presented to the arbitrator regarding employment. [Record No. 1-3] He also asserted similar claims, including promissory estoppel, breach of contract, misrepresentation, claims involving age discrimination, and an alleged violation of the Older Workers Benefit Protection Act

(OWBPA). [*Id.*] AT&T then removed the case to this Court and filed the instant motion to compel arbitration and stay the proceedings. [Record Nos. 1, 9]

## II. Standard of Review

"Before compelling an unwilling party to arbitrate, the court must engage in a limited review to determine whether the dispute is arbitrable; meaning that a valid agreement to arbitrate exists between the parties and that the specific dispute falls within the substantive scope of that agreement." *Javitch v. First Union Sec., Inc.*, 315 F.3d 619, 624 (6th Cir. 2003). And "to show that the validity of the agreement is 'in issue,' the party opposing arbitration must show a genuine issue of material fact as to the validity of the agreement to arbitrate." *Great Earth Cos. v. Simons*, 288 F.3d 878, 889 (6th Cir. 2002) (citing *Doctor's Assocs., Inc. v. Distajo*, 107 F.3d 126, 129-30 (2d Cir. 1997). "The required showing mirrors that required to withstand summary judgment in a civil suit." *Id.*

## III. Discussion

The parties acknowledge that the instrument entitled "Arbitration Agreement" is governed by the Federal Arbitration Act (FAA), which states that such a written provision "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract[.]" 9 U.S.C. § 2. The Supreme Court has "repeatedly described the Act as 'embod[ying] [a] national policy favoring arbitration, and places arbitration agreements on equal footing with all other contracts." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 346 (2011).

A four-pronged test is used when considering a motion to compel arbitration. Under this test, the Court must: (a) "determine whether the parties agreed to arbitrate"; (b) "determine the scope of that agreement"; (c) "if federal statutory claims are asserted, it must consider

whether Congress intended those claims to be nonarbitrable"; and (d) "if the [C]ourt concludes that some, but not all, of the claims in the action are subject to arbitration, it must determine whether to stay the remainder of the proceedings pending arbitration." *Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000). "[A]ny doubts regarding arbitrability must be resolved in favor of arbitration." *Glazer v. Lehman Bros.*, 394 F.3d 444, 450 (6th Cir. 2005).

Coffman discusses the first and second prongs of this test. However, he does not address the third and fourth prongs in response to the defendant's motion. [Record No. 14] He further asserts that the arbitration agreement is unconscionable, conflicts with the Notice and Consent Form, and "no consideration was given to [Coffman] for . . . unilateral changes." [*Id.*] But AT&T contends that all four prongs favor arbitration, and that Coffman waived his ability to contest the agreement by initiating arbitration in 2021. [Record No. 9-1, p. 13]

### A.     Agreement and Scope

"When deciding whether the parties agreed to arbitrate a certain matter (including arbitrability), courts generally . . . should apply ordinary state-law principles that govern the formation of contracts." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995); *Smith v. Altisource Solutions*, 726 F. App'x 384, 390 (6th Cir. 2018) (same). A party can satisfy their initial burden under the first prong by providing copies of a written and signed arbitration agreement. *Golden Gate Nat'l Senior Care, LLC, v. Addington*, No. 14-cv-327, 2015 U.S. Dist. LEXIS 44107, at *29 (E.D. Ky. Apr. 3, 2015). Here, Coffman concedes that "AT&T has provided . . . documentation to evidence the existence of a valid arbitration agreement," but argues that his current claims fall outside the scope of the agreement. [Record No. 14, p. 6]

"To determine whether a claim is within the scope of an arbitration agreement, the Court looks to the agreement's language." *Hatfield v. M&M Imports, Inc.*, 575 F. Supp. 3d 775, 784 (E.D. Ky. 2021). "[W]hen an arbitration agreement is broad, the non-movant must demonstrate that the specific dispute is expressly excluded from the arbitration agreement to avoid arbitration." *Id.* at 781. The arbitration agreement in this case contains particularly broad language: "Unless stated otherwise in this Agreement, covered claims include without limitation those arising out of or related to your employment or termination of employment with the Company and any other disputes regarding the employment relationship . . . ." [Record No. 9-3]

Coffman counters that the three "forms . . . all contradict[] themselves as to the scope of claims covered by the Arbitration Agreement." [Record No. 14, p. 6-10] Specifically, he asserts that the Notice and Consent forms contain language limiting his *release of claims* to wage and hour related matters, but the arbitration agreement broadly encompasses *all disputes regarding employment*, including claims arising under the Age Discrimination in Employment Act. [*Id.* at 8.] He further argues that he did not knowingly and voluntarily release his current claims. [*Id.* at 4-14 (citing 29 U.S.C. § 626(f)(1)).]

The scope of released claims pursuant to the parties' 2013 settlement is largely irrelevant to this Court's "limited review to determine whether the dispute is arbitrable." *See Javitch*, 315 F.3d at 624. The two concepts are distinct. A valid and enforceable release operates as a *complete bar* to a later action regarding any claim encompassed within the release. *See Gorczyca v. NVR, Inc.*, No. 13-CV-6315L, 2017 U.S. Dist. LEXIS 224231, at *5 (W.D.N.Y. July 13, 2017) (emphasis added). Whereas an agreement to arbitrate "waives only the right to seek relief *from a court* in the first instance." *14 Penn Plaza LLC v. Pyett*, 556

U.S. 247, 249 (2009) (emphasis added). This Court's concern is limited to the latter. *See Nitro-Lift Techs., L.L.C. v. Howard*, 568 U.S. 17, 20-21 (2012) ("[I]t is a mainstay of the Act's substantive law that attacks on the validity of the contract, as distinct from attacks on the validity of the arbitration clause itself, are to be resolved 'by the arbitrator in the first instance, not by a federal or state court.'"); *Javitch*, 315 F.3d at 628 ("[W]hen the issues in dispute do not involve the making or the performance of the arbitration clause itself, the arbitration clause is to be enforced and the dispute submitted to arbitration.").

The forms are not contradictory in this case. Coffman released certain claims pursuant to the parties' settlement and further agreed to arbitrate all employment-related matters. He additionally fails to support his proposition that a relatively limited release invalidates a broad arbitration agreement. *Cf. Riley Manufacturing Co. v. Anchor Glass Container Corp.*, 157 F.3d 775, 785 (10th Cir. 1998) ("[N]owhere does the Settlement Agreement affect the right of the parties to demand arbitration on topics unrelated to the enumerated 'subject matter' of the Settlement Agreement."). Based upon the language of the instrument itself, Coffman's claims fall within the scope of the arbitration agreement.

### B.  Unconscionability and Consideration

The plaintiff next asserts that the arbitration agreement is procedurally and substantively unconscionable. [Record No. 14, p. 10] "Under Kentucky law, the doctrine of unconscionability is a 'narrow exception' to the 'fundamental rule of contract law [holding] that, absent fraud in the inducement, a written agreement duly executed by the party to be held, who had an opportunity to read it, will be enforced according to its terms." *Boyd Nursing & Rehab., LLC v. Wells*, No. 22-011, 2022 U.S. Dist. LEXIS 156679, at *25 (E.D. Ky. Aug. 30, 2022) (quoting *Conseco Fin. Servicing Corp. v. Wilder*, 47 S.W.3d 335, 341 (Ky. App. 2001)).

"An unconscionable contract is 'one which no man in his senses, not under delusion, would make, on the one hand, and which no fair and honest man would accept, on the other.'" *Sorrell v. Regency Nursing, LLC*, No. 14-CV-00304, 2014 U.S. Dist. LEXIS 72726, at *23-24 (W.D. Ky. May 27, 2014) (quoting *Wilder*, 47 S.W.3d at 341). "Procedural unconscionability relates to the process by which an agreement is reached and to the form of the agreement." *Energy Homes, Div. of Southern Energy Homes, Inc. v. Peay*, 406 S.W.3d 828, 835 (Ky. 2013) (citing *Schnuerle v. Insight Communications Co.*, 376 S.W.3d 561, 576-77 (Ky. 2012)). "Substantive unconscionability refers to contractual terms that are unreasonably or grossly favorable to one side and to which the disfavored party does not assent." *Id.* (citing *Schnuerle*, 376 S.W.3d at 577).

Coffman contends that the arbitration agreement is procedurally unconscionable because the Notice did not include the same terms as the Consent Form and arbitration agreement. [Record No. 14] But "[c]lass members are not expected to rely upon the notices as a complete source of settlement information." *Brent v. Midland Funding*, LLC, No. 11 CV 1332, 2011 U.S. Dist. LEXIS 98763, *32-33 (N.D. Ohio Sept. 1, 2011) (citing *Grunin v. International House of Pancakes*, 513 F.2d 114, 122 (8th Cir. 1975)). "Class Notice 'can practicably contain only a limited amount of information,' and, therefore, may properly be limited to 'very general descriptions of the proposed settlement.'" *Int'l Union, UAW v. Ford Motor Co.*, No. 05-74730, 2006 U.S. Dist. LEXIS 70471 (E.D. Mich. July 13, 2006).

Here, the Notice states in various places that a class member must sign and submit the arbitration agreement to receive a settlement payment. [*See* 9-3, p. 17 ("[Y]ou must sign the enclosed [Consent Form] in its entirety without modification, including, but not limited to, the Release, Arbitration Agreement, and Job Duties document (if applicable) and return it in the

enclosed pre-addressed, postage-paid envelope, or fax or email them . . . .")] Coffman also had the opportunity to examine additional documents through the case website or contact the settlement administrator or class counsel:

> The above is a summary of the basic terms of the Settlement. For the precise terms and conditions of the Settlement, you are referred to the detailed Joint Stipulation of Class Settlement and Release between Plaintiffs and Defendant, which is on file with the Clerk of the Court. . . . Alternatively, the pleadings and other information about the Settlement may be examined online . . . . You may also contact the Settlement Administrator . . . or Class Counsel listed below for more information[.]"

[Record No. 9-3, p. 18]

The arbitration agreement contains plain, easily understood language, and encourages consultation with an attorney before signing: "I FURTHER ACKNOWLEDGE THAT I HAVE BEEN GIVEN THE OPPORTUNITY TO DISCUSS THIS AGREEMENT WITH CLASS COUNSEL AND WITH PRIVATE LEGAL COUNSEL AND HAVE AVAILED MYSELF OF THAT OPPORTUNITY TO THE EXTENT I WISH TO DO SO." [*Id.* at 9-3, p. 31]  It further provided a 60-day window to return the forms.  [Record No. 14-4]  And Coffman's claims would have been "dismissed without prejudice as described in the Settlement Agreement" if he failed to sign the arbitration agreement.  *See* Order Granting Joint Motion for Settlement, *Lawson et al v. BellSouth Telecommunications, Inc.*, No. 1:09-cv-03528-CAP, (N.D. Ga. Apr. 23, 2013), ECF. No. 131, p. 4.  In short, Coffman has failed to proffer sufficient facts showing procedural unconscionability.

Coffman also contends that the arbitration agreement is substantively unconscionable "because of the allocation of risks between the parties[.]"  [Record No. 14, pp. 12-13]  Specifically, he argues that the "only thing AT&T risk[ed] . . . [was] the cost[] of arbitration," while he "is now forced to arbitrate any disputes with AT&T through a forum and service

hand-selected by the company." [Record No. 14, p. 12]  But the "[a]greement also applies to any claim that the Company or any other AT&T company may have against [him]." [Record No. 14-3]  The parties are mutually obligated to arbitrate employment-related matters while AT&T must pay arbitration costs.

To hold such terms to be substantively unconscionable would go against standard industry practice and established case law.  Arbitration agreements may be valid, even if there is a *unilateral* arbitration obligation, "so long as the contract as a whole imposes mutual obligations on both parties."  *Ozormoor v. T-Mobile USA, Inc.*, 354 F. App'x 972, 975 (6th Cir. 2009).  *Cf. Morrison v. Circuit City Stores*, 317 F.3d 646, 665 n.10 (6th Cir. 2003) ("If employers find the costs of arbitration too great, they could simply end the practice of imposing mandatory arbitration agreements on their employees and litigate the statutory claims brought against them.").  The undersigned concludes that Coffman has failed to demonstrate that the terms of the arbitration are substantively unconscionable.

Coffman also appears to argue further that the arbitration agreement is invalid because "no consideration was given to [him] for . . . unilateral changes." [Record No. 14, pp. 12-13]  "[G]enerally a new consideration is required in order for an attempted modification for a contract to be valid."  *Vinaird v. Bodkin's Adm'x*, 72 S.W.2d 707, 711 (Ky. 1934).  But Coffman has failed to put forth evidence showing that the parties had a final preexisting agreement which would generally require new consideration to modify.  The settlement amount was subject to final court approval, and there is no indication in the record that Coffman was otherwise "already entitled" to receive a settlement payment.  Nevertheless, the

arbitration agreement contains the mutual obligation to arbitrate claims, which is sufficient independent consideration.[2]

### C. Stay or Dismissal

Finally, the undersigned must decide whether to stay or dismiss the action. The FAA provides that, after determining that a case is referrable to arbitration, a court "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3. While there is a judicially created exception that allows courts to dismiss an action when all claims are referred to arbitration, dismissal typically is not appropriate when a party has requested a stay. *See Ozomoor v. T-Mobile USA, Inc.*, 354 F. App'x 972 (6th Cir. 2009); *Morrison*, 70 F. Supp. 2d at 828-29. Accordingly, this matter will be stayed pending arbitration.

### IV. Conclusion

Based on the foregoing analysis and discussion, it is hereby

**ORDERED** as follows:

1. The defendant's motion to compel arbitration [Record No. 9] is **GRANTED**.

2. Subject to intervening orders, this matter is **STAYED** pending the completion of arbitration in accordance with the terms of the parties' agreement.

---

[2] In light of the above analysis, the undersigned need not address AT&T's argument that Coffman waived his ability to contest the arbitration agreement by initiating arbitration in 2021. In any event, Coffman failed to address this issue in his Response, and further failed to expand upon his conclusory statement that the agreement is "overly vague." [Record No. 14, p. 13] Where a party "mention[s] a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones," the Court may deem that argument waived. *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) (internal quotation marks omitted).

3. The parties are directed to file a joint status report every sixty days, commencing sixty days from this date.

Dated: June 21, 2023.

Danny C. Reeves, Chief Judge
United States District Court
Eastern District of Kentucky